FILED

2005 Jun-02  AM 11:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GARY DeLANCE CROCKETT        )
                            )
       vs.                   )        Case No.  2:03-cv-08033-UWC-HGD
                            )
UNITED STATES OF AMERICA     )

## REPORT AND RECOMMENDATION

Petitioner, Gary DeLance Crockett, has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.  He challenges the validity of his 2001 conviction based on a guilty plea in the United States District Court for the Northern District of Alabama to a charge of mail fraud.

Crockett entered a plea of guilty before Chief United States District Judge U. W. Clemon on October 5, 2001, to Count Two of a multi-count indictment which charged various counts of mail and bank fraud.  Count Two charged Crockett with mail fraud.  He was sentenced on January 23, 2002, to 21 months in the custody of the Attorney General, to be followed by three years of supervised release.

Petitioner's plea was entered pursuant to a plea agreement between himself and the Government, wherein he agreed to plead to Count Two of the indictment and pay restitution to all the victims.  In return, the Government agreed to recommend that petitioner be sentenced at the low end of the sentencing guidelines range and that he be given credit for acceptance of responsibility.  The Government stated that it would request a downward departure from the guidelines sentencing range pursuant to

Rule 35, Fed.R.Crim.P., and § 5K1.1 of the United States Sentencing Guidelines. (Gov't Ex. B, Plea Agreement and Conditions).

At the sentencing hearing, the trial court found that Crockett's offense level was 16 and his criminal history category was I, resulting in a sentencing range of 16 to 21 months, a supervised release period of two to three years, and a fine range of $5,000 to $50,000. (Gov't Ex. E, Sentencing Transcript, at 9). After discussion, the Court ordered that no restitution was due from Crockett but that funds seized from his bank accounts should be applied to the restitution owed to the victim. (*Id.* at 9-12).

During his allocution, petitioner requested that the Court grant him a downward departure. When the Court asked him on what grounds he was requesting this action, he responded that he "came forward after I was accused, knowing that this act was going to be discovered." (*Id.* at 13). He also claimed that he should get a downward departure for the repayment of the loss he caused the company. The Court noted, as to the first cited reason, that he already had received credit for acceptance of responsibility. As to the second ground, the Court held that this was not a recognized basis for a downward departure. (*Id.* at 14). Petitioner further stated that his coming forward as he did was "extraordinary for a crime that is similar." (*Id.*).

Petitioner also asked the Court to consider the fact that he was still trying to take care of his family and that he had health problems, in that a lump recently had been found on his head which might indicate neurological disease for which he wanted to be able to finish preliminary treatment. (*Id.* at 15). The Court noted that

there are medical facilities in federal prison and found no basis for departure.  Judge Clemon then proceeded to sentence Crockett as set out above.  (*Id.* at 16).

It subsequently came to the sentencing court's attention that the Judgment and Commitment Order in the case contained a clerical error which caused it to reflect that petitioner had pled guilty to Count Seven rather than Count Two.  Subsequent to this and to petitioner's filing of the case *sub judice*, and pursuant to an Order from the Eleventh Circuit Court of Appeals, Judge Clemon entered an Order correcting the Judgment and Commitment Order to reflect that petitioner pled to Count Two, rather than Count Seven.  (*See* Doc. #107).

Crockett, represented by the same attorney who represented him in district court, appealed his sentence to the Eleventh Circuit Court of Appeals.  His counsel filed a brief in that court pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), identifying one possible issue with merit.  That issue was whether the sentencing court abused its discretion by not departing downward upon Crockett's request.  On July 31, 2002, the Eleventh Circuit, in an unpublished opinion, granted the motion of counsel to withdraw under *Anders* and affirmed Crockett's sentence.

Sometime thereafter, Crockett filed a *pro se* request with the district court asking the court, consistent with the plea agreement, to make a recommendation to the Bureau of Prisons that he be placed in the least restrictive custodial setting appropriate for him.  On August 19, 2002, the Court entered an order granting the motion.  In its order, the Court noted that, contrary to his request for designation to

3

a less restrictive environment, Crockett also made a request that he be considered for the Bureau of Prisons "boot camp" program. The Court recommended that petitioner be considered for this program if he otherwise met the program's criteria for such designation/placement. (*See* Gov't Ex. G, Order Granting Motion to Make Recommendation).

Crockett subsequently filed various motions, including motions to correct his judgment, reduce his sentence, and depart downward. When these were denied by the trial court, petitioner appealed to the Eleventh Circuit. The appellate court held that it was without jurisdiction to consider these motions and denied all of them except his motion to correct the Judgment and Commitment Order (J&C). This motion was granted, and the Eleventh Circuit ordered the trial court to correct the clerical error in the J&C. (Gov't Ex. H, Memorandum Opinion). As noted above, the trial court did so on February 18, 2004. (*See* Doc. #107).

During the course of his appeal of his post-sentence motions, petitioner filed the pending motion pursuant to 28 U.S.C. § 2255. He raises the following claims:

> 1. Counsel was ineffective at sentencing when he failed to seek a reduction in offense level based on petitioner's extraordinary acceptance of responsibility, extraordinary restitution before sentencing and the fact that this was a one-time act of aberrant behavior.
>
> 2. Counsel was ineffective for allowing petitioner to be sentenced to an illegal sentence without filing objections with the Court in that he failed to direct the Court's attention to the fact that he pled to Count Two of the indictment, but was sentenced for violating Count Seven.

3.    Counsel failed to file motions to compel the Government to abide by its plea agreement; specifically, he failed to ensure that the Government made a recommendation to the Court for the "least restricted confinement" and that he would plead to "the least count in the indictment," which would be Count One, not Count Two.

4. Counsel was ineffective for failing to challenge the offense level in the presentence report due to an amendment to section 2B1.1 of the U.S. Sentencing Guidelines that was effective November 1, 2001, and which provided that, in calculating the loss amount, "amounts the victim has recovered at the time of sentencing from disposition of collateral, or an amount received from a third party" should be excluded from the calculation.

After review of the issues raised, the undersigned magistrate judge concludes that Crockett is not entitled to any relief. These claims are discussed below *in seriatim.*

Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-prong test to evaluate ineffective assistance claims. To obtain reversal of a conviction, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defendant. *Id.* at 687-88, 106 S.Ct. at 2064-65. Courts must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *id.* at 690, 104 S.Ct. at 2066, and "judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689, 104 S.Ct. at 2065.

*Failure to Seek Sentence Reductions*

Petitioner alleges that trial counsel was ineffective for failing to seek a reduction in his offense level based on Crockett's extraordinary acceptance of responsibility, extraordinary restitution before sentencing, and the fact that this was a one-time act of aberrant behavior.

Petitioner asserts that various Sentencing Guidelines sections provide for a reduction in his offense level based on his "family conditions, financial conditions or financial impact of fine, no prior criminal history, extraordinary restitution, [the] fact that defendant didn't rely on criminal activity for livelihood and post-offense rehabilitation." (Doc. #101, § 2255 Motion).

However, other than making these allegations, which are unsupported by any further evidence, Crockett provides no other factual basis to support a reduction in his offense level. Because he has failed to provide the necessary facts to support his allegations, he has not proved that his counsel's performance was deficient or that he was prejudiced in any way. *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (vague, conclusory allegations in a § 2255 petition are insufficient to state a basis for relief). Furthermore, at sentencing, petitioner himself requested a downward departure for extraordinary acceptance of responsibility and extraordinary restitution. The Court denied both. Therefore, he was not prejudiced by his trial counsel's failure to raise these issues.

Likewise, "[f]amily ties and responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."

6

U.S.S.G. § 5H1.6 (May 1, 2001). *See United States v. Mogel*, 956 F.2d 1555, 1565 (11th Cir. 1992). To the extent that such factors may form the basis of a downward departure, the burden is on the petitioner to provide the court with sufficient facts to support this claim. *See United States v. Matthews*, 168 F.3d 1234, 1248-49 (11th Cir. 1999). Petitioner has provided none.

Lack of criminal history is not a basis for downward departure because criminal history is already taken into consideration by the guidelines when a defendant's criminal history category is determined. *Mogel*, 956 F.2d at 1565.

Furthermore, there is nothing "extraordinary" with regard to petitioner's payment of restitution. Most of the restitution came from assets which had been seized by the Government rather than from monies which petitioner provided through his own efforts. Although extraordinary restitution and rehabilitation may be the basis of a downward departure, *United States v. Kim*, 364 F.3d 1235 (11th Cir. 2004), petitioner has provided no evidence from which this Court can conclude that his efforts qualify as "extraordinary."

In consideration of these factors, this issue is without merit. Counsel cannot have been ineffective for failing to raise a meritless issue. *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

*Conviction Under Count Seven*

Petitioner alleges that trial counsel was ineffective for failing to object to his being sentenced under Count Seven when, in fact, he pled guilty to Count Two of the

indictment. The record of petitioner's plea shows very clearly that he entered his guilty plea to Count Two of the indictment. The reference to Count Seven in the J&C was a mere clerical error. This error was corrected by the trial court. (*See* Doc. #107). Therefore, this issue is without merit. Counsel cannot have been ineffective for failing to raise a meritless issue. *Nyhuis, supra.*

*Counsel's Failure to Compel Government to Abide By Plea Agreement*

Petitioner also alleges that trial counsel was ineffective for failing to ensure that the Government abided by the plea agreement by making a recommendation to the Court for the "least restrictive confinement" for which he qualified and that he would plead "to the least count in the indictment," which would be Count One rather that Count Two. (Doc. #110, § 2255 Motion).

Crockett correctly represents that his plea agreement reflects that the Government would recommend that, in the event he received a custodial sentence, he be placed in the least restrictive alternative available. (See Gov't Ex. B, Plea Agreement, at 1). The record reflects that this recommendation was not made to the Court. However, sometime after sentencing, Crockett filed a motion with the Court requesting that he be incarcerated in compliance with the plea agreement. He further requested that he be considered for placement in an Intensive Confinement Center ("boot camp"). The Court granted this request, if he otherwise qualified for such placement. (*See* Gov't Ex. G). Consequently, Crockett has not shown how he was prejudiced by this action by his attorney. This claim is without merit.

However, Crockett's representation that it was part of the plea agreement that he be allowed to plead to "the least count of the indictment" is not supported by either the plea agreement or the plea hearing transcript. According to the plea agreement, Crockett agreed to plead guilty to Count Two of the indictment. (*See* Gov't Ex. B, Plea Agreement, at 1). The plea transcript reveals the same thing. (*See* Gov't Ex. C, Plea Transcript, at 2). Because petitioner pled to the Count recited in the plea agreement, there is no basis for the attorney representing petitioner at the plea to make an objection to petitioner's plea to Count Two of the indictment. Petitioner also has not demonstrated how he was prejudiced. Therefore, this issue is without merit. Counsel cannot have been ineffective for failing to raise a meritless issue. *Nyhuis*, *supra*.

*Failure to Challenge Offense Level*

Petitioner's final claim of ineffective assistance of counsel is that his counsel was ineffective for not challenging his calculated offense level based on an amendment to § 2B1.1 of the United States Sentencing Guidelines. According to Crockett, the identified amendment directed the sentencing courts to exclude the amount the victim has recovered from disposition of collateral or amount received from a third party at the time of sentencing. *See* U.S.S.G. § 2B1.1, Comment 2(E) (Nov. 1, 2001).

It appears that trial counsel for petitioner did file objections to the offense level computation. (*See* Doc. #42, Objections to Presentence Report, at ¶ 1). Counsel for Crockett notified the United States Probation Officer that he objected to the loss

amount because "all monies have been repaid to PeopleSoft, and there is no outstanding restitution owed." (*Id.*) This objection and others voiced by counsel for petitioner were filed with the Court as Document #42. However, it does not appear that this objection was reasserted on the record at the sentencing hearing.

According to the Government, the victim of petitioner's crime was a business known as PeopleSoft. Although the Government had seized all of the funds in Crockett's accounts before he was convicted and sentenced, and Verizon Wireless had been reimbursed in full by PeopleSoft for the amount of its loss caused by Crockett, PeopleSoft had not yet recovered any of its loss at the time of sentencing. Consequently, the Government alleges that the total loss amount was properly not reduced by any amount in calculating Crockett's sentence under that amendment.

The sentencing occurred on January 22, 2002. The Court did not enter an order of restitution ordering that money seized from petitioner by the Government be paid over to PeopleSoft as restitution until January 25, 2002. (*See* Doc. #52, Order of Restitution). Therefore, it is clear from the record that petitioner was not entitled to a reduction in his total offense level based on the amendment. This issue is without merit. Counsel cannot have been ineffective for failing to raise a meritless issue. *Nyhuis*, *supra.*

### CONCLUSION

Based upon the foregoing analysis, the magistrate judge RECOMMENDS that the Motion to Vacate, Set Aside or Correct Sentence be DENIED.

10

## NOTICE OF RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fifteen (15) days of the date on which it is entered, file specific written objections with the clerk of this court. Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

DONE this 2nd day of June, 2005.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE